# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CAJUN GLOBAL LLC,<br>d/b/a CHURCH'S CHICKEN,<br>CAJUN FUNDING CORP. and<br>CAJUN REALTY, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO.<br>_____ |
| v. | ) ) | |
| THOMAS & IRONS, LLC, CRW,<br>LLC, ROY L. IRONS, WORTH<br>THOMAS and CAROLYN<br>WASHINGTON, | ) ) ) ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE

Plaintiffs Cajun Global LLC d/b/a Church's Chicken ("Global"), Cajun Funding Corp. ("Funding") and Cajun Realty, LLC ("Realty") (collectively, "Plaintiffs") bring this Verified Complaint for Damages, Injunctive Relief and Specific Performance against Defendants Thomas & Irons, LLC ("T&I"), CRW, LLC ("CRW"), Roy L. Irons ("Irons"), Worth Thomas ("Thomas") and Carolyn Washington ("Washington") (collectively, "Defendants"), and state as follows:



1.

Plaintiff Global operates and franchises quick service Church's Chicken® restaurants ("Church's Chicken® Restaurants") throughout the United States. Beginning in 2015, Global entered into franchise agreements with Defendant CRW and T&I to operate a total of two Church's Chicken® Restaurants in Mississippi. Defendants Thomas and Irons each executed a guaranty personally guaranteeing CRW and T&I's obligations to Global under each of the franchise agreements. Washington executed a guaranty personally guaranteeing CRW's obligations to Global.

2.

This is an action to collect amounts due to Global from Defendants pursuant to the franchise agreements, guaranties and a sublease as a result of: (a) CRW's unauthorized closure of its Church's Chicken® Restaurant; (b) the resulting cross-default that CRW's closure triggered under T&I's franchise agreement; (c) damages resulting from the early termination of both franchise agreements; (d) unpaid rent owed by Defendants under a sublease for one of the franchised restaurants; (e) damages resulting directly from CRW and T&I's infringement at the former Church's Chicken® Restaurants; and (d) damages resulting directly from T&I' unauthorized post-termination operations of its Church's Chicken®

Restaurant.

3.

This action also seeks to enjoin Defendants from willfully and unlawfully using Plaintiffs' goodwill and reputation as a result of Defendants' pirating of Funding's registered trademarks and service marks (the "Church's Chicken Marks").  As a result of CRW and T&I's unauthorized post-termination use of Church's Chicken Marks, Funding also seeks damages from Defendants for such infringement.

4.

This action also seeks to compel Defendants to deliver possession of the real property located at 3289 Medgar Evers Blvd, Jackson, Mississippi to Realty as required by the sublease between Realty and T&I.

5.

This action also seeks to compel Defendants to recognize and honor Global's contractual right to purchase the assets of the franchised business located on the premises in Jackson, Mississippi at fair market value.

6.

All conditions precedent to the institution of this action have been satisfied,

discharged, excused, and/or waived.

## **THE PARTIES**

7.

Plaintiff Global is a Delaware limited liability company with its principal place of business, corporate headquarters, and member all located in Atlanta, Georgia.

8.

Plaintiff Funding is a Delaware corporation with its principal place of business and corporate headquarters located in Atlanta, Georgia.  Plaintiff Funding owns the Church's Chicken Marks.  Funding granted Global the exclusive right to use and sublicense the Church's Chicken Marks in connection with the franchising of Church's Chicken Restaurants by Global.

9.

Realty is a Delaware limited liability company with its principal place of business, corporate headquarters, and members all located in Atlanta, Georgia.

10.

Defendant T&I is a Mississippi limited liability company with its principal place of business in Mississippi. T&I can be served with process through its

registered agent, Worth Thomas, at 200 South Lamar Street, Suite 10508, Gulfport, Mississippi 39505.

11.

Defendant CRW is a Mississippi limited liability company with its principal place of business in Mississippi. CRW can be served with process through its registered agent, Roy L. Irons, at 11352 Palm Valley Cove, Gulfport, Mississippi 39505.

12.

Defendant Irons is a citizen and resident of the State of Mississippi. Irons can be served with process at 11352 Palm Valley Cove, Gulfport, Mississippi 39503.

13.

Defendant Thomas is a citizen and resident of the State of Mississippi. Thomas can be served with process at 200 South Lamar Street, Suite 10508, Jackson, Mississippi 39201.

14.

Defendant Washington is a citizen and resident of the State of Mississippi. Washington can be served with process at 3511 Reynosa Drive, Gulfport,

Mississippi 39501.

## JURISDICTION AND VENUE

### 15.

This Court has subject matter jurisdiction over this action based upon:

(a)     28 U.S.C. § 1332 because: Plaintiff Funding is a corporation incorporated under the laws of the State of Delaware with its principal place of business and corporate headquarters in Georgia; Plaintiff Global is a Delaware limited liability company with its principal place of business, corporate headquarters, and member all located in Georgia;  Plaintiff Realty is a Delaware limited liability company with its principal place of business, corporate headquarters and member all located in Georgia; Defendant CRW is a Mississippi limited liability company with its principal place of business, corporate headquarters, and member all located in Mississippi; Defendant T&I is a Mississippi limited liability company with its principal place of business, corporate headquarters, and member all located in Mississippi; Defendant Irons is a citizen of Mississippi; Defendant Thomas is a citizen of Mississippi; Defendant Washington is a citizen of

Mississippi; and the amount in controversy (without interest and costs) exceeds $75,000;

(b)     Section 39 of the Lanham Act, 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331, 1337 and 1338 (a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and

(c)     28 U.S.C. § 1338(b) and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' common law unfair competition and Defendants' breaches of written contracts and other related causes of action.

16.

The exercise of personal jurisdiction over Defendants by this Court is proper under Georgia's Long Arm Statute (O.C.G.A. § 9-10-91) based on the following facts (in addition to the other facts alleged in this Complaint):

(a)     Plaintiff Global operates and franchises the Church's Chicken® Restaurants throughout the United States.  Global's franchise operations are conducted and supervised from its headquarters located in Atlanta, Georgia;

(b)     Defendants carried on a continuous course of direct communications

with Plaintiffs via mail, email, and telephone through Plaintiffs'
headquarters in Atlanta, Georgia;

(c)    The course of dealing between Global and its franchisees (including
Defendants) shows that decision-making authority is vested in
Global's headquarters in Atlanta, Georgia;

(d)    Defendants negotiated with Global and Realty in Atlanta, Georgia for
(among other things) the acquisition of the long-term franchise
agreements and sublease agreement with the knowledge that they
would benefit from their affiliation with Global and Realty;

(e)    Defendants voluntarily entered into the franchise agreements, subleas,
and guaranties with Global and Realty, which envisioned continuing
and wide-reaching contacts with Global in Georgia, including
regulation of their franchised business and leased real estate from
Global and Realty's headquarters in Atlanta, Georgia;

(f)    Defendants have purposefully availed themselves of the benefits and
protection of Georgia law by entering into the franchise agreements
and guaranties with Global, all of which expressly provide that
Georgia law will govern any and all disputes; and

(g)    Defendants breached contracts (which were to be performed in

Georgia) by failing to make payments and otherwise performing their obligations to Global and Realty in Georgia pursuant to the franchise agreements, subleases, and guaranties.

17.

The exercise of personal jurisdiction over Defendants is also proper based upon the agreement of the parties in the franchise agreements, subleases, and guaranties.

18.

Venue is proper in this Court pursuant to:

(a)     28 U.S.C. §1391(b)(2); and

(b)     the forum selection clauses agreed to by the parties in the franchise agreements, subleases, and guaranty.

## **UNDERLYING AGREEMENTS WITH CRW**

19.

On April 27, 2015, Plaintiff Global and CRW entered into a Franchise Agreement, identified as No. 10898, for Defendant CRW to open and continuously operate the Church's Chicken® Restaurant and System at 11487 Highway 49, Gulfport, Mississippi ("10898 Franchise Agreement"). A true and correct copy of

the 10898 Franchise Agreement is attached hereto as Exhibit A and incorporated herein by reference.

20.

On April 27, 2015, Defendants Irons, Thomas and Washington each executed a Guaranty Agreement whereby Irons, Thomas and Washington individually, personally and unconditionally guaranteed to Global the performance of each and every obligation of CRW under the 10898 Franchise Agreement (the "10898 Guaranty").  A true and correct copy of the 10898 Guaranty is attached hereto as Exhibit B and incorporated herein by reference.

21.

Upon demand from Global, the 10898 Guaranty further obligate Defendants Irons, Thomas and Washington to render any payment or performance owed by CRW to Global.

**UNDERLYING AGREEMENTS WITH T&I**

22.

On September 1, 2015, Plaintiff Global and T&I entered into a Conditional Consent to Transfer (Franchise Agreement) whereby Plaintiff Global conditionally consented to T&I's acquisition of an existing Church's Chicken franchised

restaurant identified as No. 378 and located at 3280 Medgar Evers Blvd, Jackson, Mississippi (the "378 Conditional Consent Agreement").  A true and correct copy of the 378 Conditional Consent Agreement is attached hereto as Exhibit C and incorporated herein by reference.

23.

Pursuant to the 378 Conditional Consent Agreement, T&I agreed to remodel the restaurant located at 3280 Medgar Evers Blvd, Jackson, Mississippi and to sign a new franchise agreement governing its new franchise operations.

24.

To that end, on or about September 1, 2015, Plaintiff Global and T&I entered into a Franchise Agreement granting T&I the right to continuously operate the Church's Chicken® Restaurant and System at 3280 Medgar Evers Blvd, Jackson, Mississippi ("378 Franchise Agreement"). A true and correct copy of the 378 Franchise Agreement is attached hereto as Exhibit D and incorporated herein by reference.

25.

On August 26, 2015, Defendant Thomas executed a Guaranty Agreement whereby Thomas individually, personally and unconditionally guaranteed to

Global the performance of each and every obligation of T&I to Global under the 378 Franchise Agreement (the "Thomas Guaranty"). A true and correct copy of the Thomas Guaranty is attached hereto as Exhibit E and incorporated herein by reference.

26.

On August 26, 2015, Defendant Irons executed a Guaranty Agreement whereby Irons individually, personally and unconditionally guaranteed to Global the performance of each and every obligation of T&I to Global under the 378 Franchise Agreement (the "Irons Guaranty"). A true and correct copy of the Irons Guaranty is attached hereto as Exhibit F and incorporated herein by reference. The Thomas Guaranty and Irons Guaranty are herein collectively referred to the "378 Guaranty." The 10898 Guaranty and the 378 Guaranty are herein referred to collectively as the "Guaranties."

27.

Upon demand from Global, the 378 Guaranty further obligates Defendants Thomas and Irons to render any payment or performance owed by T&I to Global.

28.

On September 1, 2015, Realty entered into a Sublease Agreement with T&I

-12-

(the "Sublease") whereby Realty subleased to T&I certain real property located at 3280 Medgar Evers Blvd, Jackson, Mississippi (the "378 Premises"). A true and correct copy of the Sublease is attached hereto as Exhibit G and incorporated herein by reference.

29.

On April 26, 2015, Defendants Irons and Thomas entered into a Guaranty Agreement whereby they individually, personally and unconditionally guaranteed to Realty the performance of each and every obligation of T&I under the Sublease (the "Sublease Guaranty"). A true and correct copy of the Sublease Guaranty is attached hereto as Exhibit H and incorporated herein by reference.

## THE CHURCH'S CHICKEN RESTAURANTS

30.

The 10898 Franchise Agreement and the 378 Franchise Agreement shall be collectively referred to herein after as the "Franchise Agreements."

31.

The table below lists the Church's Chicken Restaurants that are subject to the Franchise Agreements, and they are collectively referred to in this Complaint as the "Restaurants."

-13-

| Restaurant No. | Restaurant Location |
|---|---|
| Church's Chicken #10898 | 11487 Highway 49, Gulfport, Mississippi ("10898 Restaurant") |
| Church's Chicken #378 | 3280 Medgar Evers Blvd, Jackson, Mississippi ("378 Restaurant") |

32.

The 10898 Franchise Agreement between Global and CRW provides for an initial term beginning on June 4, 2015 and expiring on June 4, 2034.

33.

The 378 Franchise Agreement between Global and T&I provides for an initial term beginning on September 1, 2015 and expiring on May 17, 2022.

## CRW AND T&I'S OBLIGATIONS
## UNDER THE FRANCHISE AGREEMENTS

34.

CRW and T&I are obligated by the terms of their respective Franchise Agreements to continuously operate the Restaurants. If CRW or T&I cease operations of the franchised Restaurants, the Franchise Agreements permit Global

to terminate such agreement without opportunity to cure and require immediate payment to Global of all sums due and owing under the same agreement. The Franchise Agreements likewise require CRW and T&I to periodically remodel the franchised restaurants in order to meet Global's required specifications in accordance with the terms set forth therein.

35.

Each of the Franchise Agreements likewise contain cross default provisions which provides that it shall be an event of default under the franchise agreement if the named franchisee, operating principal or five percent (5%) owner, defaults on any other agreement with Global.

36.

As more particularly set forth below, termination of any Franchise Agreement obligates Defendants to pay Global liquidated damages pursuant to the formula set forth under the Franchise Agreement.

## THE CHURCH'S CHICKEN MARKS

37.

To identify the source, origin and sponsorship of Global's products and services, Global has employed and caused the Church's Chicken Marks to be used

throughout the United States. Global and its franchisees have spent hundreds of millions of dollars advertising and promoting the Church's Chicken Restaurants, services and products. This extensive advertising and marketing of the Church's Chicken products and restaurant services under the Church's Chicken Marks has had a dramatic impact upon the public, creating widespread recognition and good will.

38.

As a result of such expenditures and efforts by Global and its franchisees, valuable good will has been developed for the Church's Chicken Marks and for the Church's Chicken Restaurants, products and services which bear the Church's Chicken Marks, and thus, identify Global as their sponsor or source.

39.

Funding owns the registrations for the Church's Chicken Marks. Funding granted Global the exclusive right to use and sublicense the Church's Chicken Marks in connection with the franchising of Church's Chicken Restaurants by Global. Pursuant to Church's Chicken franchise agreements between Global and their franchisees, Global grants its franchisees a limited license and authority to use and display the Church's Chicken Marks, but only in such manner, and at such

locations and times, as are expressly authorized by Global. In no event is a franchisee authorized to use the Church's Chicken Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all Church's Chicken franchise agreements, including the Franchise Agreements at issue in this case.

40.

Set forth below is an abbreviated listing of the Church's Chicken Marks registered in the United States Patent and Trademark Office, all of which continue to be used by Defendants:

| TRADEMARK | REGISTRATION NUMBER | REGISTRATION DATE |
|---|---|---|
| **CHURCH'S CHICKEN** | 3519711 | 10/21/08 |
| **CHURCH'S CHICKEN Since 1952 & Design** | 2721849 | 6/3/03 |
| **CHURCH'S CHICKEN Since 1952** | 3653765 | 7/14/09 |

41.

Plaintiffs comply with all legal requirements to ensure that Funding retains its exclusive rights with respect to the Church's Chicken Marks. Under Funding's license agreement with Global, Funding has the right and obligation to protect and defend the Church's Chicken Marks and Global has the duty to notify Funding of any infringement.

42.

In addition to complying with all legal requirements, Plaintiffs take all reasonable precautions to ensure that Funding retains its exclusive rights with respect to the Church's Chicken Marks and to prevent their unauthorized use. For example, Global educates its franchisees and employees as to the importance of the Church's Chicken Marks and instructs them with regard to the proper use of the Church's Chicken Marks.

43.

Global also instructs its employees to "police" the Church's Chicken Marks; that is, to look for unauthorized use of the Church's Chicken Marks in the business community and report any such use to Global. Additionally, under the terms of their Church's Chicken franchise agreements, Global's franchisees are required to notify Global of any infringement or imitation of the Church's Chicken Marks that

comes to their attention.

44.

The registrations of the Church's Chicken Marks are currently in full force and effect, and Funding has given notice to the public of the registration of the Church's Chicken Marks as provided in 15 U.S.C. § 1111.

45.

Global's products bearing the Church's Chicken Marks are offered and sold in interstate commerce.

**CRW'S EARLY CLOSURE DEFAULT AND<br>TERMINATION OF THE 10898 FRANCHISE AGREEMENT**

46.

On or about November 14, 2017, CRW unilaterally ceased operations at the 10898 Restaurant for more than five consecutive days, which constitutes a breach of the 10898 Franchise Agreement and provides Global with the right to immediately terminate the 10898 Franchise Agreement upon notice to CRW (without opportunity to cure).

47.

On January 5, 2018, as a result of the foregoing, and in accordance with

Section 18.A(3) of the 10898 Franchise Agreement, Global sent a letter to CRW, Irons, Thomas and Washington notifying them of the termination of the 10898 Franchise Agreement and amounts owed as a result of the same (the "10898 Termination Letter"). A true and correct copy of the 10898 Termination Letter is attached hereto as Exhibit I and incorporated herein by reference.

48.

Specifically, the 10898 Termination Letter notified CRW, Irons, Thomas and Washington of the immediate termination of the 10898 Franchise Agreement (due to CRW's unauthorized early closure of the 10898 Restaurant) and CRW's resulting obligation to pay liquidated damages to Global in the amount of $107,340.60, which was calculated pursuant to the formula prescribed in Section 19.C of the terminated 10898 Franchise Agreement.

49.

Additionally, the 10898 Termination Letter notified CRW, Irons, Thomas and Washington that they would be responsible for the cost and expense of any legal action arising from their failure to perform under the 10898 Franchise Agreement and 10898 Guaranty, including actions pertaining to collecting amounts due under the same.

**T&I' CROSS-DEFAULT**
**UNDER THE FRANCHISE AGREEMENT AND SUBLEASE**

50.

On January 5, 2018, Global sent a letter to T&I, Irons and Thomas notifying them that T&I was in default of the 378 Franchise Agreement pursuant the cross-default provision and that Global was immediately terminating the 378 Franchise Agreement (the "378 Termination Letter"). A true and correct copy of the 378 Termination Letter is attached hereto as Exhibit J and incorporated herein by reference.

51.

Specifically, Section 18A.15 of the 378 Franchise Agreement permits Global to terminate the 378 Franchise Agreement if franchisee, the operating principal, any member of the continuity group or any 5% owner is in default of another franchise agreement with Global.

52.

CRW's unilateral early closure of the 10898 Restaurant resulted in an incurable default under the 378 Franchise Agreement because both Thomas and Irons have at least 5% ownership interest in both CRW and T&I. (*See* Exs. A and

D at Schedule 2.)

53.

The 378 Termination Letter notified T&I, Irons and Thomas of T&I's resulting obligation to pay liquidated damages to Global in the amount of $228,088.80, which was calculated pursuant to the formula prescribed in Section 19.C of the terminated 378 Franchise Agreement.

54.

Additionally, the 378 Termination Letter notified T&I, Irons and Thomas that they would be responsible for the cost and expense of any legal action arising from their failure to perform under the 378 Franchise Agreement, the Irons Guaranty and the Thomas Guaranty, including actions pertaining to collecting amounts due under the same.

55.

On January 5, 2018, Realty sent a letter to T&I notifying it that T&I was in default of the Sublease (due to the termination of the 10898 Franchise Agreement) and, as a result of this incurable default, Realty was terminating the Sublease. Realty further demanded that T&I deliver immediate possession of the 378 Premises to Realty (the "Notice to Quit"). A true and correct copy of the Notice to

Quit is attached hereto as Exhibit K and incorporated herein by reference.

56.

The Notice to Quit also notified T&I that it would be responsible for the costs and expenses of any legal action resulting from its failure to deliver immediate possession of the 378 Premises to Realty.

## CRW AND T&I' OBLIGATIONS UPON
## TERMINATION OF THE FRANCHISE AGREEMENTS

57.

Upon termination of the Franchise Agreements, CRW and T&I, respectively, are required to:

(1)     immediately pay Global and its affiliates all sums due and owing Global or its affiliates pursuant to the Agreements;

(2)     promptly return to Global the Manual, any copies of the Manual, the training kit (if applicable), and all other materials and information furnished by Global, including the return in good condition and repair all computer software, disks, and other electronic storage media;

(3)     continue to abide by the covenants contained in the Franchise Agreements and to not take any action that violates the covenants;

(4) discontinue all use of the Church's Chicken Marks in connection with the Restaurants and any and all items bearing the Marks; remove the Marks from the Restaurants and from clothing, signs, materials, motor vehicles, and other items owned or used by CRW and T&I in the operation of the Restaurants; cancel all advertising for the Restaurants that contains the Marks; and take such action as may be necessary to cancel any filings or registrations for the Restaurants that contain any Marks;

(5) make such alterations and modifications to the Restaurants as may be necessary to clearly distinguish to the public the Restaurants from their former appearance and also make specific additional changes as Global may request for that purpose, at CRW and T&I' expense; and

(6) furnish to Global (within 30 days after the effective date of termination) evidence satisfactory to Global of CRW and T&I' compliance with the above-listed obligations.

The obligations set forth in subparts (1) – (6) of this Paragraph shall be collectively referred to in this Complaint as the "Post-Termination Obligations."

58.

By agreeing to these terms, upon termination of the Franchise Agreements,

CRW and T&I specifically agreed to immediately cease operating their restaurants as Church's Chicken Restaurants and to desist from all use of the Church's Chicken Marks and trade dress.

59.

Further, effectively immediately, upon the respective terminations of the Franchise Agreements, CRW and T&I have no right to use or display the Church's Chicken Marks and no right to operate using the Church's Chicken System at the Restaurants.

60.

The Franchise Agreements further prohibit CRW and T&I (upon termination) from using any of Plaintiffs' trade secrets and promotional materials, or any mark confusingly similar to the Church's Chicken Marks.

61.

The 10898 Termination Letter and the 378 Termination Letter demanded that Defendants immediately bring themselves into compliance with the Post-Termination Obligations of the Franchise Agreements, including (without limitation) the obligations to: 1) immediately pay Global all sums due and owing to Global pursuant to the respective agreement; 2) immediately cease use of all

Church's Chicken Marks and other confidential and proprietary information; 3) return the Manual and all other confidential materials related to the operation of the franchised business to Global; 4) promptly make such alternations and modifications to the Restaurants as may be necessary to clearly distinguish to the public the Restaurant from its former appearance; and 5) furnish to Global within thirty (30) days, evidence of compliance with these post-termination obligations. (*See* 10898 Termination Letter, Ex. H and 378 Termination Letter, Ex. I)

## GLOBAL'S EXERCISE OF ITS OPTION TO PURCHASE UNDER THE 378 FRANCHISE AGREEMENT

### 62.

On February 2, 2018, Global sent a letter to T&I notifying it that Global was exercising its option to purchase certain assets, namely the furniture, fixtures and equipment, of the 378 Restaurant (the "Purchase Option Notice"). A copy of the Purchase Option Notice is attached hereto as Exhibit L and incorporated herein by reference.

### 63.

Pursuant to Section 20(A) of the 378 Franchise Agreement, Defendants

agreed that, upon termination of the agreement, Global has the right, at its option, and upon notice to T&I within 30 days after termination, to purchase any assets of the 378 Franchised Restaurant for fair market value. Section 20(B)-(K) sets forth the specific details regarding the process for selling the assets of the 378 Restaurant and resolving any potential dispute regarding the fair market value.

64.

The Purchase Option Notice notified Defendants of Global's proposed calculation of the fair market value and requested that Defendants notify Global within three days if they did not agree with this calculation. The Purchase Option also notified Defendants that, as a result of Global's impending purchase of the assets of the 378 Restaurant, Global was reserving its right to require Defendants to de-identify the 378 Restaurant. The Purchase Option Notice also notified Defendants that they had defaulted under the 378 Conditional Consent Agreement and 378 Franchise Agreement for not having remodeled and reimaged the 378 Restaurant as contractually required. As a result, Global will have to complete the remodel and reimage of the 378 Restaurant on T&I's behalf in an amount estimated to be $120,000.00. Global reserves its right to seek recovery of the amount it spends remodeling the 378 Restaurant on T&I's behalf, in addition to other damages Global has suffered as a result of T&I's failure to complete the

remodel as required.

65.

Despite Global's efforts to enforce its purchase option rights under the 378

Franchise Agreement, Defendants have indicated an unwillingness to cooperate

with the same.

## CRW AND T&I'S INFRINGEMENT AND REFUSAL
## TO COMPLY WITH POST-TERMINATION
## COVENANTS OF THE FRANCHISE AGREEMENTS

66.

Notwithstanding the January 5, 2018 termination of the 10898 Franchise

Agreement and Defendants' receipt of the 10898 Termination Letter, CRW has

failed to remove from the 10898 Restaurant many of the Church's Chicken signs

and all other items which bear or display the Church's Chicken Marks, name,

symbols and slogans.

67.

Similarly, notwithstanding the January 5, 2018 termination of the 378

Franchise Agreement and Defendants' receipt of the 378 Termination Letter and

the Sublease Letter, T&I has failed to cease operations at the 378 Restaurant and in

fact continues to operate the same as Church's Chicken®.

68.

Defendants' unlawful post-termination operations of the 378 Restaurant are being carried out with conscious indifference to its post-termination obligations under the 378 Franchise Agreement and its obligation to deliver immediate possession of the 378 Premises to Realty.

69.

Defendants' failure to comply with the Post-Termination Covenants is likely to confuse the public. As a result, the potential damage to Global's goodwill and reputation is incalculable, and the potential harm to Global is irreparable.

**DAMAGES UNDER FRANCHISE AGREEMENTS AND GUARANTIES**

70.

Under the terms of the Franchise Agreements and the Guaranties, Defendants are obligated to pay Global the full amount of lost future royalties and advertising fund contributions as a result of Defendants' breach and early termination of the Franchise Agreements. Specifically, the parties agreed that Section 19.C of each Franchise Agreements prescribe the appropriate formula to calculate Global's damages of the same. Accordingly, as a result of CRW's unilateral decision to cease operating the 10898 Restaurant, Defendants are

obligated to pay Global monetary damages for each terminated Franchise

Agreement as calculated pursuant to Section 19.C of each Franchise Agreement.

Defendants are also obligated to pay Global damages for other contractual defaults,

including failing to remodel and reimaged the franchised restaurants as required.

71.

Under the terms of the Franchise Agreements, Defendants also agreed in

writing that if Global utilizes legal counsel in connection with any failure by

Defendants to comply with the Franchise Agreements or Guaranties, Defendants

shall reimburse Global for all expenses incurred, including (but not limited to)

attorneys' fees.  The parties also agreed that the Court and not a jury would

determine these amounts.

72.

Defendants also agreed that, in any litigation to enforce the terms of the

agreements between Global and Defendants, Global, as the prevailing party, shall

be paid by Defendants all costs and expenses, including attorneys' fees, incurred as

a result.

73.

The 10898 Termination Letter demanded that CRW, Irons, Thomas and

Washington immediately pay $107,340.60 in liquidated damages, resulting from the early termination of the 10898 Franchise Agreement.

74.

The 378 Termination Letter demanded that T&I, Irons and Thomas immediately pay $228,088.80 in liquidated damages resulting from the early termination of the 378 Agreement.

75.

Despite Defendants' obligations under the Franchise Agreements and the Guaranties, and despite Defendants' receipt of both the 10898 Termination Letter and the 378 Termination Letter, Defendants have failed and refused to pay the damages due and owing to Global.

76.

Defendants are indebted to Global for all monetary damages, including without limitation past and future royalty fees, advertising contributions, liquidated damages, remodel and reimage costs, and legal fees incurred by Global as a result of Defendants' breaches.   In addition to the foregoing, Defendants also owe Global $6,543.35 in unpaid royalty fees, advertising fees and other miscellaneous charges due under the 10898 Franchise Agreement.

77.

Plaintiffs have engaged undersigned counsel and have agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between the parties.

78.

Global in no way breached the Franchise Agreements, and Global has fulfilled each and every obligation it had pursuant to the Franchise Agreements.

**DAMAGES UNDER THE SUBLEASE AND SUBLEASE GUARANTY**

79.

Under the terms of the Sublease and the Sublease Guaranty, T&I, Irons and Thomas agreed that in any litigation to enforce the terms of the agreements between the parties, Realty, as the prevailing party, shall be paid by T&I, Irons and Thomas all costs and expenses, including attorneys' fees, incurred as a result. The parties also agreed that the Court and not a jury would determine these amounts.

80.

The Notice to Quit demanded that T&I, Irons and Thomas immediately deliver possession of the Premises to Realty.

81.

Despite T&I, Irons and Thomas' obligations under the Sublease and Sublease and Sublease Guaranty, and despite Defendants' receipt of the Notice to Quit, T&I, Irons and Thomas have failed and refused to pay the damages due and owing to Realty.

82.

T&I, Irons and Thomas are indebted to Realty for all monetary damages, including without limitation legal fees incurred by Realty as a result of Defendants' breaches and $6,543.35 in past-due rent.

83.

Plaintiffs have engaged undersigned counsel and have agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between the parties.

84.

Realty in no way breached the Sublease, and Realty has fulfilled each and every obligation it had pursuant to the Sublease.

**COUNT I**
**BREACH OF THE 10898 FRANCHISE AGREEMENT**
**(UNAUTHORIZED CLOSURE AND FAILURE TO PAY DAMAGES)**
**Against CRW**

85.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

86.

The 10898 Franchise Agreement is an enforceable contract entered into by and between Global and CRW.

87.

On or about November 14, 2017, CRW unilaterally ceased operations of the 10898 Restaurant, which constitutes a breach of the 10898 Franchise Agreement and provides Global with the right to immediately terminate the same upon notice to CRW without any opportunity to cure.

88.

On January 5, 2018, through the 10898 Termination Letter, Global gave CRW, Irons, Thomas and Washington notice that the 10898 Franchise Agreement was terminated (without opportunity to cure) because CRW ceased operations of

the 10898 Restaurant in violation of the terms of the 10898 Franchise Agreement.

89.

Through the 10898 Termination Letter, Global demanded that CRW, Irons, Thomas and Washington immediately pay liquidated damages in the amount of $107,340.60 pursuant to the terms of the 10898 Franchise Agreement.

90.

Despite CRW's obligations under the 10898 Franchise Agreement and despite CRW's receipt of the 10898 Termination Letter, CRW has failed and refused to pay the damages due and owing to Global.

91.

CRW's failure to pay Global as obligated is a breach of the 10898 Franchise Agreement.

92.

The forgoing breaches have directly and proximately caused loss and damage to Global.

93.

CRW owes Global not less than $113,883.35, exclusive of legal fees,

representing liquidated damages, unpaid royalties, unpaid advertising fees and other charges which are now past due and owing pursuant to the 10898 Agreement.

## COUNT II
## BREACH OF 378 FRANCHISE AGREEMENT AND CONDITIONAL CONSENT AGREEMENT
## (UNCURED CROSS-DEFAULT,
## FAILURE TO REMODEL AND FAILURE TO PAY DAMAGES)
### Against T&I, Irons and Thomas

94.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

95.

The 378 Agreement is an enforceable contract entered into by and between Global and T&I.

96.

T&I breached the cross-default provision of the 378 Franchise Agreement due to CRW's unauthorized closure of the 10898 Restaurant. T&I also breached the 378 Franchise Agreement and Conditional Consent Agreement by failing to remodel and reimage the 378 Restaurant.

97.

On January 5, 2018, through the 378 Termination Letter, Global gave Defendants notice that the 378 Franchise Agreement was terminated because CRW had ceased operations of the 10898 Restaurant in violation of the terms of the 10898 Franchise Agreement.

98.

Through the 378 Termination Letter, Global demanded that T&I, Irons and Thomas immediately pay liquidated damages in the amount of $228,088.80 pursuant to the terms of the 378 Franchise Agreement.

99.

Despite T&I's obligations under the 378 Franchise Agreements and despite Defendants' receipt of the 378 Termination Letter, T&I, Irons and Thomas have failed and refused to pay the damages due and owing to Global.

100.

T&I's failure to remodel the 378 Restaurant and failure to pay as obligated is a breach of the 378 Franchise Agreement and Conditional Consent Agreement.

101.

The forgoing breaches have directly and proximately caused loss and damage to Global.

102.

T&I owes Global not less than $228,088.80, exclusive of legal fees, which is now past due and owing pursuant to the 378 Franchise Agreement, in addition to remodel costs estimated to be $120,000.00.

**COUNT III**
**BREACH OF THE FRANCHISE AGREEMENTS**
**(CONFIDENTIALITY AND TRADE SECRETS)**
**Against CRW and T&I**

103.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

104.

The confidentiality provisions of the Franchise Agreements serve to protect Global's legitimate business interests, including, but not limited to, its trade secrets, confidential business information and its good will and substantial relationships with its franchisees and customers and are reasonably necessary to

protect Global's legitimate business interests.

105.

CRW and T&I have not returned to Global the confidential Manual, recipe books, and kitchen recipe signs for the Restaurants, as required by the Franchise Agreements.

106.

CRW and T&I' actions constitute breaches of the confidentiality provisions of the Franchise Agreements.

107.

These breaches have directly and proximately caused loss and damage to Global in an amount to be determined at trial.

**COUNT IV**
**BREACH OF THE FRANCHISE AGREEMENTS**
**(POST-TERMINATION OBLIGATIONS)**
**Against CRW and T&I**

108.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

109.

Defendant CRW has breached the Post-Termination Obligations of the 10898 Franchise Agreement by refusing to de-identify the 10898 Restaurant from Church's Chicken and comply with the other Post-Termination Obligations.

110.

Defendant T&I has breached the Post-Termination Obligations of 378 Franchise Agreement by refusing shut down operations and comply with the other Post-Termination Obligations, including the obligation to sell certain assets to Global as required under Global's purchase option.

111.

CRW and T&I's breaches of the Post-Termination Obligation in the Franchise Agreements have directly and proximately caused loss and damage to Global in an amount to be determined at trial.

**COUNT V**
**BREACH OF GUARANTIES**
**Against Irons, Thomas and Washington**

112.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

113.

Pursuant to the 10898 Guaranty, Irons, Thomas and Washington unconditionally and personally guaranteed to Global the performance of each and every obligation of CRW under the 10898 Franchise Agreement, including post-termination obligations.

114.

As a result, Irons, Thomas and Washington are responsible for all damages resulting from early termination of the 10898 Franchise Agreement in an amount not less than $113,883.35.

115.

Likewise, Irons, Thomas and Washington also owe Global for all damages Global has suffered as a result of CRW's breach (and ongoing breaches) of the confidentiality provisions and post-termination covenants of the 10898 Franchise Agreements. Irons, Thomas and Washington are also responsible for CRW's performance obligations as alleged herein.

116.

Therefore, Irons, Thomas and Washington owe Global an amount not less than $113,883.35 (exclusive of legal fees) which is now past due and owing.

117.

Pursuant to the Irons Guaranty and the Thomas Guaranty, Irons and Thomas unconditionally and personally guaranteed to Global the performance of each and every obligation of T&I under the 378 Franchise Agreement, including post-termination obligations.

118.

As a result, Irons and Thomas are responsible for all damages resulting from early termination of the 378 Franchise Agreement in an amount not less than $228,088.80, in addition to remodel costs estimated to be $120,000.00.

119.

Likewise, Irons and Thomas also owe Global for all damages Global has suffered as a result of T&I's breach (and ongoing breaches) of the confidentiality provisions and post-termination covenants of the 378 Franchise Agreements. Thomas and Irons are also responsible for T&I's performance obligations as alleged herein.

120.

Therefore, Irons and Thomas owe Global an amount not less than $228,088.80 (exclusive of legal fees) which is now past due and owing, in addition

to the estimated remodel costs.

## COUNT VI
## BREACH OF THE SUBLEASE
## Against T&I

### 121.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

### 122.

The Sublease is an enforceable contract entered into by Realty and T&I.

### 123.

T&I breached the cross-default provision of the Sublease Agreement due to CRW's unauthorized closure of the 10898 Restaurant and termination of the 378 Franchise Agreement.

### 124.

On January 5, 2018, through the Notice to Quit, Realty gave Defendants notice that the Sublease was terminated (without opportunity to cure) because CRW ceased operations of the 10898 Restaurant in violation of the terms of the 10898 Franchise Agreement which also resulted in the termination of the 378 Franchise Agreement.

125.

Through the Notice to Quit, Realty demanded that T&I immediately deliver possession of the 378 Premises to Realty.

126.

Despite T&I's obligations under the Sublease Agreements and despite Defendants' receipt of the Sublease Letter, T&I have failed and refused to deliver possession of the 378 Premises to Realty.

127.

T&I's failure to deliver possession of the 378 Premises is a breach of the Sublease. In addition, T&I has breached the Sublease by failing to pay past-due rent in the amount of $2,769.23.

128.

The forgoing breaches have directly and proximately caused loss and damage to Realty in an amount to be determined at trial.

## COUNT VII
## BREACH OF THE SUBLEASE GUARANTY
### Against Thomas and Irons

### 129.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

### 130.

Pursuant to the Sublease Guaranty, Irons and Thomas unconditionally and personally guaranteed to Realty the performance of each and every obligation of T&I under the Sublease, including post-termination obligations.

### 131.

As a result, Irons and Thomas are responsible for all damages resulting from early termination of the Sublease.

### 132.

Likewise, Irons and Thomas also owe Realty for all damages Realty has suffered as a result of T&I's breach of the Sublease in an amount to be proven at trial.

## COUNT VIII
## <u>ATTORNEYS' FEES</u>
### Against All Defendants

### 133.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

### 134.

The Franchise Agreements provides that if Global utilizes legal counsel in connection with any failure by Defendants to comply with the Franchise Agreements or Guaranties, Defendants shall reimburse Global for all expenses incurred, including (but not limited to) attorneys' fees. The parties agreed that the Court and not a jury would determine these amounts.

### 135.

The Franchise Agreements and Guaranties provide that the prevailing party is entitled to its attorneys' fees and costs. Pursuant to those provisions and O.C.G.A. § 13-1-11, Global hereby demands that Defendants reimburse it for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

### 136.

The Sublease provides that the prevailing party is entitled to its attorneys'

fees and costs. Pursuant to those provisions and O.C.G.A. § 13-1-11, Realty hereby demands that Defendants reimburse it for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

137.

In addition, Defendants have acted in bad faith, caused unnecessary expense and delay, and been stubbornly litigious. As such, Plaintiffs are entitled to their reasonable attorneys' fees incurred in this litigation pursuant to O.C.G.A. § 13-6-11.

## COUNT IX
## LANHAM ACT INFRINGEMENT
### Against All Defendants

138.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

139.

Defendants' acts with respect to the Restaurants constitute infringements of Funding's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT X
## LANHAM ACT FALSE DESIGNATIONS
### Against All Defendants

### 140.

Funding re-alleges the foregoing paragraphs as if fully set forth herein.

### 141.

Defendants' acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

## COUNT XI
## COMMON LAW TRADEMARK INFRINGEMENT
### Against All Defendants

### 142.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

### 143.

Defendants' acts with respect to the Restaurants constitute unlawful trademark and service mark infringements under the common law.

**COUNT XII**
**COMMON LAW UNFAIR COMPETITION**
**Against All Defendants**

144.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

145.

Defendants' acts constitute unfair competition under the common law.

**COUNT XIII**
**VIOLATION OF GEORGIA'S**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**Against All Defendants**

146.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

147.

Defendants have misappropriated Global's confidential and proprietary business information, including recipes, methods and systems contained in the Manual by failing to return items after the franchise relationship between the parties ended with respect to the Restaurants.

148.

Such actions cause a likelihood of confusion and misunderstanding as to Defendants' affiliation, connection and association with Global, which no longer exists for the Restaurants post-termination of the Franchise Agreements for these restaurants.

149.

The foregoing conduct is unlawful, unethical and deceitful.

150.

Defendants' actions constitute a violation of Georgia's Uniform Deceptive Trade Practices Act.

151.

These actions have directly and proximately caused loss and damage to Plaintiffs.

**COUNT XIV**
**SPECIFIC PERFORMANCE**
**Against T&I**

152.

Global and Realty incorporate and re-allege the foregoing paragraphs as if

fully set forth herein.

153.

Time is of the essence under Global's purchase option in the 378 Franchise

Agreement and T&I's obligation to deliver possession of the 378 Premises to

Realty under the Sublease.

154.

The damages being sought will not fully compensate Global or Realty for

the damages it has sustained and will continue to sustain caused by T&I's breach

of the 378 Franchise Agreement by not honoring Global's purchase option and

under the Sublease by not delivering possession of the 378 Premises to Realty.

155.

Global has fully performed under the 378 Franchise Agreement.

156.

Realty has fully performed under the Sublease.

157.

Global hereby requests that specific performance be awarded to Global

requiring that T&I perform its obligation under the 378 Franchise Agreement and

sell the assets identified by Global to Global as set forth in the Purchase Option

Notice.

158.

Realty hereby requests that specific performance be awarded to Realty requiring that T&I perform its obligations under the Sublease and deliver possession of the 378 Premises to Realty.

159.

Specific performance is necessary and appropriate under the circumstances of this case to provide relief to Global and Realty, if and only if it is awarded sufficiently ahead of any possible changes in the fair market value of the assets identified by Global in the Purchase Option Notice.

## COUNT XV
## INJUNCTION AND TEMPORARY RESTRAINING ORDER
### All Defendants

160.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

161.

Defendants continue to unlawfully operate a Church's Chicken at the 378 Restaurant despite the fact that the 378 Franchise Agreement has been terminated.

162.

Defendants continue to use and display the trademarks and other confidential and proprietary information of Plaintiffs at both the 378 and 10898 Restaurants.

163.

Defendants' actions are resulting in irreparable harm to Plaintiffs, making money damages inadequate.

164.

Plaintiffs will prevail on their claims due to Defendants' trademark infringement and violations of Franchise Agreements.

165.

As a result, Defendants should be immediately enjoined and restrained from continuing to operate at the 10898 Restaurant and from using and displaying the trademarks, confidential and other propriety information of Plaintiffs at the 378 and 10898 Restaurants.

166.

Defendants should further be ordered to de-identify with Plaintiffs at the 10898 Restaurant, to return the Manual and all other confidential materials to

Plaintiffs, and promptly make such alterations and modifications to the 10898,

Restaurant as may be necessary to clearly distinguish to the public these

restaurants from their former appearance.

167.

T&I should be ordered to deliver possession of the 378 Premises to Realty.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

(1)    For temporary restraining orders and/or preliminary and permanent

injunctions enjoining Defendants and all persons acting on their behalf, in

concert with, or under his control, from:

(a)    manufacturing, packaging, distributing, selling, advertising,

displaying, or promoting any product or service bearing any of the

Church's Chicken Marks, or any colorable imitation thereof at the

Restaurants;

(b)    displaying or using any of the Church's Chicken Marks to advertise or

promote the sale of, or to identify, the Restaurants, or any product or

service provided therein; and

(c)    making in any manner whatsoever any statement or representation, or

performing any act, likely to lead members of the public to believe

that Defendants, the Restaurants, and the products and services

provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Plaintiffs.

(2)     For temporary restraining orders and/or preliminary and permanent injunctions directing Defendants and all persons acting on Defendants' behalf, in concert with Defendants, or under Defendants' control, to:

(a)     recall and deliver up to Plaintiffs all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the Church's Chicken Marks, or any colorable imitation of the Church's Chicken Marks from the 10898 Restaurant;

(b)     recall and deliver up to Plaintiffs all copies and editions of the Manual that are in Defendants' actual or constructive, direct or indirect, possession, custody or control at the Restaurants, including all supplements and addenda thereto, and all other materials containing restaurant operating instructions, restaurant business practices, or plans of Plaintiffs;

(c)     allow Plaintiffs, at a reasonable time, to enter the premises of the 10898 Restaurant and make whatever changes, including removal of

tangible assets, that are necessary to distinguish the premises from
their appearance as a Church's Chicken Restaurant;

(d)    account and pay over to Plaintiffs all gains, profits, and advantages
derived by Defendants at the Restaurants from any trademark and
service mark infringement, breach of contract, and unfair competition
to the full extent provided for by Section 35 of the Lanham Act, 15
U.S.C. §1117 and by the controlling principles of common law; and

(e)    unlawfully using or disclosing Plaintiffs' confidential information,
including confidential business information and trade secrets, Manual,
recipes, product specifications, information, techniques and know-
how.

(3)    For a specific performance order, temporary restraining orders and/or
preliminary and permanent injunctions directing T&I and all persons acting
on its behalf, in concert with it, or under its control, to recognize, honor and
cooperate with Global's right to purchase the assets identified by Global at
fair market value in accordance with the terms of the 378 Franchise
Agreement.

(4)    For specific performance order, temporary restraining orders and/or
preliminary and permanent injunctions directing T&I and all persons acting

on its behalf, in concert with its, or under its control, to immediately

surrender possession of the 378 Premises to Realty.

(5)     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117, for money

damages, plus three times additional actual damages Plaintiffs have

sustained by reason of Defendants' trademark and service mark infringement

and unfair competition at the Restaurants;

(6)     For pre-judgment interest and Plaintiffs' reasonable attorneys' fees incurred

in protecting its rights in this action in accordance with the terms of the

Franchise Agreements and, because of the willful nature of the infringement,

pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

(7)     For compensatory damages and attorneys' fees owing pursuant to the

Franchise Agreements, Guaranties, Sublease and Sublease Guaranty due to

Defendants' breaches of contract in an amount not less than $395,421.40;

(8)     For money damages, including treble damages for violations of Georgia's

Uniform Deceptive Trade Practices Act related to the Restaurants;

(9)     For an order directing Defendants to file with the Court, and to serve on

Plaintiffs' counsel within ten days after service of any injunction or order

issued herein, or within such a reasonable time as the Court shall direct, a

report, in writing and under oath, setting forth in detail the manner in which

Defendants have complied with such injunction or order;

(10) For all costs, disbursements, and expenses of this action; and

(11) For all such other relief as this Court may deem just and proper.

Respectfully submitted this 2nd day of February, 2018.

CAIOLA & ROSE, LLC

*/s/ Anne P. Caiola*
Anne P. Caiola
Georgia Bar No. 142639
annie@caiolarose.com
Elizabeth B. Rose
Georgia Bar No. 558747
elizabeth@caiolarose.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

CAJUN GLOBAL LLC,  )
d/b/a CHURCH'S CHICKEN,  )
CAJUN FUNDING CORP. and  )
CAJUN REALTY, LLC,  )
 )
    Plaintiffs,  )   **CIVIL ACTION FILE NO.**
 )
v.  )   _____
 )
THOMAS & IRONS, LLC, CRW,  )
LLC, ROY L. IRONS, WORTH  )
THOMAS and CAROLYN  )
WASHINGTON,  )
 )
    Defendants.  )

---

## VERIFICATION

COMES NOW the undersigned officer or agent for Cajun Realty, LLC, who verifies under penalty of perjury that upon her knowledge and belief, the within and foregoing allegations in the forgoing Verified Complaint for Damages, Injunctive Relief and Specific Performance are true and correct.

Executed on February _2_, 2018.

Cajun Realty, LLC

By: _____
Andra J. Terrell
Its: Assistant General Counsel

A notary is not required pursuant to 28 U.S.C. § 1746.

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CAJUN GLOBAL LLC, )
d/b/a CHURCH'S CHICKEN, )
CAJUN FUNDING CORP. and )
CAJUN REALTY, LLC, )
 )
   Plaintiffs, )   CIVIL ACTION FILE NO.
 )   _____
v. )
 )
THOMAS & IRONS, LLC, CRW, )
LLC, ROY L. IRONS, WORTH )
THOMAS and CAROLYN )
WASHINGTON, )
 )
   Defendants. )

_____

### VERIFICATION

    COMES NOW the undersigned officer or agent for Cajun Funding Corp, who verifies under penalty of perjury that upon her knowledge and belief, the within and foregoing allegations in the forgoing Verified Complaint for Damages, Injunctive Relief and Specific Performance are true and correct.

    Executed on February **2**, 2018.

                    Cajun Funding Corp.

                    By: _____

                    Andra J. Terrell
                    Its: Assistant General Counsel

A notary is not required pursuant to 28 U.S.C. § 1746.

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CAJUN GLOBAL LLC,<br>d/b/a CHURCH'S CHICKEN,<br>CAJUN FUNDING CORP. and<br>CAJUN REALTY, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>THOMAS & IRONS, LLC, CRW,<br>LLC, ROY L. IRONS, WORTH<br>THOMAS and CAROLYN<br>WASHINGTON,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE NO.<br><br>_____ |

## VERIFICATION

COMES NOW the undersigned officer or agent for Cajun Global LLC d/b/a Church's Chicken, who verifies under penalty of perjury that upon her knowledge and belief, the within and foregoing allegations in the forgoing Verified Complaint for Damages, Injunctive Relief and Specific Performance are true and correct.

Executed on February 2, 2018.

Cajun Global LLC d/b/a Church's Chicken

By: _____

Andra J. Terrell

Its: Assistant General Counsel

A notary is not required pursuant to 28 U.S.C. § 1746.